UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, | ) ) ) | |
| vs. | ) ) ) | No. 4:22-cr-00041-TRM-SKL-1 |
| TONY CANNON, JR., *Defendant*. | ) ) ) | **Evidentiary Hearing Requested** |

**BRIEF IN SUPPORT OF FIRST MOTION TO SUPPRESS**

COMES NOW Defendant and respectfully shows the Court as follows in support of his concurrently filed First Motion to Suppress:

**BACKGROUND**

## I.  Indictment

Mr. Cannon has been indicted on one count of being a felon in possession of a firearm, one count for conspiracy to distribute controlled substances, and several counts of possession with intent to distribute. *See* [RE 1 (11/22/22 Indictment), PageID#1-3].

## II.  The Government's Discovery

*A. Report of the Alleged Traffic Stop*

According to a report from Estill PD Officer Clinton Grant, he pulled over the

1

car that Mr. Cannon was driving on October 29, 2022, due to an alleged traffic violation:



**Narrative**
ON 10/29/2022 AT APPROXIMATELY 0036 I WAS TRAVELING S BOUND 41A WHEN I OBSERVED A BLACK CHRYSLER 300 WHO WAS ALSO TRAVELING SOUTHBOUND GET INTO THE TURNING LANE TO TURN LEFT ONTO SPRING CREEK RD. AT THAT TIME I OBSERVED THE VEHICLE DRIVE OVER THE TURNING LANE INTO THE NORTH BOUND LANE OF TRAVEL BEFORE MAKING THE LEFT TURN ONTO SPRING CREEK. I MADE A U-TURN AND INITIATED MY EMERGENCY EQUIPMENT STOPPING THE VEHICLE ON SPRING CREEK RD IN FRONT OF THE RIVER

Print Date: Nov 22 2022 - 11:11:25           Estill Springs Police Department
Powered by iSOMS(c) Driven by Values        Incident_Details        MLBAKER
                                            Tony Cannon, Jr. - Discovery Docs - 046

**Estill Springs Police Department**
**Incident Report**
**Case Number: 2022-070405**

Report Status: APPROVED
Case Status: ACTIVE
Page 5 of 7

**Narrative**
OF LIFE CHURCH. ONCE I GOT OUT OF THE VEHICLE I MADE CONTACT WITH THE DRIVER TONY E CANNON JR. I ADVISED HIM WHO I WAS AND THE REASON FOR THE STOP. HE TOLD ME THAT HE COULD NOT SEE. I THEN

[Discovery #046-047].

### B. Body-Camera Video

The Government's discovery includes footage from an officer's body camera on October 29, 2022. [Discovery file 2022-070405 Evans, Dennis, pursuit shots fired.MP4, hereafter "BodyCam"]. The footage begins after Mr. Cannon's car has come to a complete stop; therefore, it does not capture the alleged traffic infraction.

At approximately 05:51:19, the officer places Mr. Cannon in handcuffs after an identification check revealed an outstanding warrant for criminal trespassing out of Lincoln County:

2



[*Id.*]. A few seconds later, without *Miranda* warnings being given, an officer can be heard saying: "Be honest with me, is there any weed in the car? Because I smell it." [BodyCam 05:51:25-28]. Thereafter, Mr. Cannon appears to answer with words including: "You probably smell it on me." [BodyCam 05-51:32].

During the course of the interrogation of Mr. Cannon, a passenger in the car hops in the driver's seat and speeds off with Mr. Cannon's car, causing Mr. Cannon to become visibly upset.

### C. Stationhouse Interrogation

Discovery also indicates that government agents conducted a custodial interrogation of Mr. Cannon at the Franklin County Sheriff's Office. [Discovery #83]. Neither the written report nor the video of the interrogation indicates the time that the

3

interrogation began. But, after issuance of *Miranda* warnings, the video shows that an agent began his questioning of the handcuffed and shackled Mr. Cannon with "Can you kind of give me a rundown of what happened last night?" [File Discovery file VTS_01_1.VOB at 01:46]. Mr. Cannon made various statements over approximately the next twenty minutes.

## ARGUMENT

### I. Law Enforcement Violated *Miranda*

Under *Miranda v. Arizona*, 384 U.S. 436 (1966), advice of rights must precede custodial interrogations. A failure to comply results in suppression. *See id.* at 479.

Here, the video evidence shows an officer asking Mr. Cannon questions about alleged marijuana use—after he was already in handcuffs. [BodyCam 05:51:25-28]. *Miranda* warnings were required but not provided; therefore, his subsequent statements are inadmissible.

The suppression required for the on-the-scene *Miranda* violation extends to the statements made at the stationhouse. Where required *Miranda* warnings were initially withheld during questioning but later given, *Miranda* may still require suppression of all the statements. The Supreme Court so held in *Missouri v. Seibert*, 542 U.S. 600 (2004). While a majority agreed that the question-first tactic used there violated *Miranda*, a majority could not agree as to the test to be applied.

The Government bears the burden of establishing the efficacy of any *Miranda*

4

warnings. *E.g.*, *United States v. Nichols*, 512 F.3d 789, 798 (6th Cir. 2008) ("It is the government's burden to establish a waiver by a preponderance of the evidence." (citation omitted)).

The Sixth Circuit has determined that the plurality opinion in *Seibert* and its multi-factor test supplies the controlling standard for the efficacy of *Miranda* warnings after custodial questioning has already occurred. *United States v. Ray*, 803 F.3d 244, 272 (6th Cir. 2015) ("Therefore, we adopt *Seibert* plurality's multi-factor test for this Circuit..."). Thus, in this Circuit, the analysis proceeds as follows:

> [T]he admissibility of statements given after midstream *Miranda* warnings hinges on whether "a reasonable person in the suspect's shoes could have seen the station house questioning as a new and distinct experience, [and whether] the Miranda warnings could have made sense as presenting a genuine choice whether to follow up on the earlier admission." *Seibert*, 542 U.S. at 616 (plurality opinion). The factors identified by the plurality as relevant to this inquiry are "the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second [interrogations], the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." *Id*.

*Ray*, 803 F.3d at 272-73.

Here, the evidence shows that the questioning at the stationhouse was a continuation of that done on the scene. Indeed, the questioning began with law enforcement directing Mr. Cannon to discuss the events that had surrounded his arrest. Furthermore, Mr. Cannon would note, that even under Justice Kennedy's narrower test

5

(which just not apply in this Circuit), law enforcement's failure to advise as to the inadmissibility of the prior questioning strongly cuts against the Government. *See Seibert*, 542 U.S. at 622 (Kennedy, J., concurring) ("[A]n additional warning that explains the likely inadmissibility of the prewarning custodial statement may be sufficient [to cure the prior failure to give *Miranda* warnings]. No curative steps were taken in this case, however, so the postwarning statements are inadmissible and the conviction cannot stand.").

Because the Government cannot show valid *Miranda* warnings, all Mr. Cannon's custodial interrogation statements must be suppressed.

## II. The Stationhouse Statements Were Involuntary.

Even if not already barred as fruit of the poisonous tree from illegal on-scene questioning, Mr. Cannon's statements at the stationhouse would be independently inadmissible under 18 U.S.C. § 3501 and the Fifth Amendment.

As for § 3501, it governs admission of a defendant's "confession," which is statutorily defined to mean "any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing." 18 U.S.C. § 3501(d). Under the statute, the Court must exclude any confession that was not statutorily voluntary. 18 U.S.C. § 3501(a). The Government bears the burden of proving voluntariness. *E.g.*, *Lego v. Twomey*, 404 U.S. 477, 489 (1972) ("[T]he prosecution

6

must prove at least by a preponderance of the evidence that the confession was voluntary."). In deciding the issue of voluntariness, the Court should consider all the attendant circumstances, such as "the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment…." 18 U.S.C. § 3501(b).

The Fifth Amendment voluntariness analysis is similar. *See, e.g.*, *Withrow v. Williams*, 507 U.S. 680, 693 (1993) ("[C]ourts look to the totality of circumstances to determine whether a confession was voluntary.").

From the existing discovery, it is currently unclear when Mr. Sanford was arrested within the meaning of 18 U.S.C. § 3501 and the Fifth Amendment. Officer Grant's report indicates that the traffic stop began at approximately "0036." [Discovery #046]. The body camera footage shows Mr. Cannon formally placed in handcuffs at 05:51:19, which is already almost six hours from when Officer Grant indicated that the incident began. An individual can be under arrest after a traffic stop for constitutional purposes even before being placed in handcuffs. *See, e.g.*, *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) ("If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." (citation omitted)). It is not clear how much longer after that the interrogation at the Franklin County Sheriff's Office. And the discovery does

7

not indicate when Mr. Cannon was brought before a magistrate.

Furthermore, any voluntariness inquiry should also consider Mr. Cannon's lack of sleep, due to the late/early hour; the shock from having had his car stolen and from being unexpectedly arrested on a misdemeanor warrant; and the lingering effect of the on-scene illegal interrogation.

To the extent that the Court finds that the statements constitutionally involuntary, as they appear to have been, the Court should likewise exclude their fruits. *See, e.g.*, *Wong Sun v. United States*, 371 U.S. 471 (1963).

## CONCLUSION

After an evidentiary hearing, this Court should suppress all illegal evidence and their fruits.

Dated: October 2, 2023

Respectfully submitted,

TONY CANNON, JR.

s/Howard W. Anderson III
Howard W. Anderson III
B.P.R. No. 34693

TRULUCK THOMASON LLC
3 Boyce Ave.

Greenville, SC 29601
864-331-1751 (Ph)
1-888-501-1704 (toll free)
howard@truluckthomason.com

or

PO Box 2242
Cleveland, TN 37320-2242

## CERTIFICATE OF SERVICE

I, Howard W. Anderson III, certify that I filed a copy of the foregoing paper using the Court's CM/ECF system, which will deliver a copy to all counsel of record except for the following, whom I have this day served by U.S. Mail:

n/a

s/Howard W. Anderson III<br>
Howard W. Anderson III