UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | )  4:22-cr-41-TRM-SKL |
| v. | ) |
| | ) |
| | ) |
| TONY CANNON, Jr. | ) |

**UNITED STATES RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS (R. 45.)**

Cannon seeks the suppression at trial of his incriminating statements. He submits that an unwarned question about marijuana shortly after he was placed in custody invalidated subsequent post-*Miranda* stationhouse statements. He also argues that his incriminating statements were involuntary irrespective of *Miranda*.

Facts

Prior to October 29, 2022, TBI SA Nathan Massey had been conducting an investigation into Cannon. Over the course of three controlled purchases – each charged in the Indictment – Cannon distributed significant quantities of fentanyl and methamphetamine.

On October 29, 2022, at approximately 12:30 a.m., Estill Springs, Tennessee, police officer Clinton Grant stopped the car Cannon was driving. There were two passengers in the car. Grant learned that Cannon had an active arrest warrant from Lincoln County. Grant advised Cannon that he was under arrest and placed him in handcuffs. Shortly after this, Grant, as Cannon accurately recounts in his brief, addressed Cannon and said, "Be honest with me, is there any weed in the car, because I smell it?" Cannon responds, "You probably smell it on me." Intending to search Cannon's car, Grant went to the trunk of his patrol car and put gloves on. He then went to Cannon's car where he asked the front seat passenger, Cannon's father, to get out of the vehicle. The

Page **1** of **6**
Case 4:22-cr-00041-TRM-SKL   Document 50   Filed 10/16/23   Page 1 of 6   PageID #: 121

passenger resisted a pat down of his person, ran from police, and threw a pistol along the roadside. The other passenger climbed into the driver's seat and sped away.[1] Cannon was audibly upset by this turn of events.

Approximately ten hours later, at 11:07 a.m., TBI SA Nathan Massey and Lincoln County, Tennessee, Sheriff's Investigator Mike Pitts, met with Cannon, who was still in custody, in an interview room at the Franklin County Sheriff's Office. Massey advised Cannon of his rights under Miranda. Massey told Cannon what he wished to speak with him about. Cannon agreed to speak with Massey. Over the course of a lengthy recorded interview, Cannon did most of the talking. Cannon challenged the officers and made arguments for himself. He offered to cooperate with law enforcement by buying drugs from others. He made numerous incriminating statements. Given his preceding investigation into Cannon's drug dealing, Massey was primarily interested in that topic, although he did not give away the details of the investigation during the interview. At one point, homicide investigators joined the interview to ask questions about a separate case. Cannon's wife, Adrian, was allowed to come into the room for a period of time as well.

Analysis

a. *The unwarned roadside question that elicited the statement by Cannon that the officer may have been smelling marijuana on him rather than from the car did not render the subsequent warned statement invalid.*

The Supreme Court has explicitly held that custodial interrogations occur when "questioning [is] initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in a significant way." *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977) (internal quotations omitted). To qualify as an interrogation, a statement

---

[1] Dennis E. Evans was apprehended a short time later, after he shot at police and tried to submerge Cannon's car in a river. He is charged separately in 4:22-cr-40-TRM-CHS.

must be reasonably likely to elicit incriminating information. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). In this case, the response elicited from Cannon may have been mildly incriminating. His statement was more likely calculated to dissuade the officer from searching the car and so more closely resembles a denial. Cannon had little to fear from smelling like marijuana himself – there is no crime on the books in Tennessee that prohibits such an odor. But, for the sake of argument, if it is an incriminating statement, the United States concedes it occurred in response to a question that could have elicited an incriminating response ("I have knowledge of the marijuana you are about to find in the car"), asked while he was in custody without *Miranda*.

Cannon cites the applicable law on the question of whether the subsequent *Miranda* warning legitimizes Cannon's stationhouse confession. *United States v. Ray*, 803 F.3d 244, 272 (6th Cir. 2015), adopted the multi-factor test for admissibility of statements after "midstream" *Miranda* warnings in *Missouri v. Siebert*, 542 U.S. 600, 615 (2004).[2]

The *Seibert* plurality announced a five-factor test to determine whether delayed Miranda warnings were nonetheless effective, directing courts to consider "(1) the completeness and detail of the questions and answers in the first round of interrogation; (2) the overlapping content of the two statements; (3) the timing and setting of the first and second [statements]; (4) the continuity of police personnel; and (5) the degree to which the interrogator's questions treated the second round as continuous with the first." *Id*. All of these factors strongly favor admissibility.

(1) There was no follow-up by Grant of his single question of the defendant after his arrest,

---

[2] But see *United States v. Woolridge*, 64 F.4th 757, 762 (6th Cir. 2023): "Although no opinion commanded a majority in *Seibert*, our circuit adopted the plurality opinion's objective approach to midstream *Miranda* warnings, which does not consider the intent of the officer's conduct. *Ray I*, 803 F.3d at 272. In that conclusion, we are alone. Eight circuits hold that Justice Kennedy's concurrence controls…" Justice Kennedy deemed suppression unwarranted unless officers (a) "deliberately" withhold *Miranda* warnings in a "calculated" way to elicit a confession, and (b) provide insufficient curative measures, *e.g.*, "a substantial break in time and circumstances" or "an additional warning." *Seibert*, 542 U.S. at 620-22 (Kennedy, J., concurring).

nor was there any interest in getting further details of why the defendant may have smelled like marijuana. Grant simply believed there was marijuana in the car and he was going to search for it. It is plain that he did not particularly care about the defendant's answer. (2) Although Massey asked Cannon to tell him what happened the night before, Massey did not return to Grant's question at all and showed very little interest if any in whether Cannon knew if there was marijuana in the car. (3) The warned confession to Massey took place ten hours later in the calm of a quiet interview room. This was nothing like the circumstances of Cannon's roadside statement that he may have smelled like marijuana. (4) Cannon was arrested by a uniformed Estill Springs police officer. That officer had nothing to do with his interview ten hours later, nor did anyone else from Estill Springs P.D. And (5) Massey was interested in questioning Cannon about fentanyl and methamphetamine. Other investigators were interested in a murder. It seems inaccurate even to refer to this stationhouse questioning as a "second round" of questioning under these circumstances.

    b. *Cannon's statements were voluntary.*

A determination of the voluntariness of a defendant's confession is viewed under the totality of the circumstances surrounding the interrogation. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The government bears the burden of proof to show by a preponderance of the evidence that the defendant voluntarily waived his *Miranda* rights. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). When a defendant claims that a confession was coerced, the government bears the burden of proving by a preponderance of the evidence that the confession was in fact voluntary. *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999); *United States v. Wrice*, 954 F.2d 406, 410 (6th Cir.1992). A condition precedent to the finding of involuntariness is coercive government conduct. *Connelly*, 479 U.S. at 165; *see also*, *United States v. Macklin*, 900 F.2d 948,

951-52 (6th Cir. 1990) (confession of mentally retarded defendant voluntary where no coercive police activity and defendant understood consequences of actions), *United States v. Newman*, 889 F.2d 88, 94-95 (6th Cir. 1989)(absent any evidence of coercion on the part of government agents, defendant's mental impairment as a result of long term alcoholism was insufficient to render statements inadmissible); *Mahan*, 190 F.3d at 422 (threshold to determination that confession was involuntary is requirement that police extorted the confession by means of coercive activity); *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988) (same).

The Sixth Circuit has established three requirements for a finding that a confession was involuntary due to police coercion: (i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement. *Mahan*, 190 F.3d at 422.

In determining the validity of a defendant's *Miranda* waiver, courts must consider the totality of the circumstances surrounding the interrogation, "including the defendant's characteristics, the interview environment, and the details of the interrogation." *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987) (citing *United States v. Wertz,* 625 F.2d 1128, 1134 (4th Cir. 1980). "The test of voluntariness is whether the defendant's will has been 'overborne' or his 'capacity for self-determination critically impaired.'" *Id.* at 1071-72 (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 225, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973)). "Voluntariness is not, however, 'to be equated with the absolute absence of intimidation,' for under this test virtually no statement would be voluntary." *Id.* at 1072 (quoting *Wertz,* 625 F.2d at 1134).

The Court will have the benefit of reviewing the audiovisual recording of Cannon's interrogation. Cannon asserts that his will was overborne in this case because of a lack of sleep,

the shock of having his car stolen, his unexpected arrest and the "lingering effect of the on-scene illegal interrogation." (R. 46, Brief in Support, at PageID # 116.) The Court will likely find that Cannon was energetic and loquacious with the officers. He gave no indication of particular fatigue, nor of shock. He was markedly unintimidated.

## Conclusion

Cannon's motion to suppress should be denied.

Respectfully submitted,

FRANCIS M. HAMILTON III
United States Attorney

By: **/s/ Scott A. Winne**
Scott A. Winne, ME Bar #007120
Assistant U.S. Attorney
1110 Market Street, Suite 515
Chattanooga, TN 37402
(423) 752-5140
Scott.Winne@usdoj.gov
